# EXHIBIT A

2024 WL 3679380
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, Del Rio Division.

STATE OF TEXAS, Plaintiff,
v.
ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; MERRICK GARLAND, in his official capacity as Attorney General of the United States; and the UNITED STATES DEPARTMENT OF JUSTICE, Defendants.

Civil Cause No. 2:23-CV-00024-AM
|
Filed 08/05/2024

### AMENDED MEMORANDUM OPINION AND ORDER

ALIA MOSES Chief United States District Judge

*1 Before the Court is the Defendants' Motion to Dismiss the Plaintiff's First Amended Complaint ("FAC"). (ECF No. 34.) The Court has reviewed the FAC (ECF No. 23-2), the Motion to Dismiss (ECF No. 34), the Plaintiff's Response (ECF No. 41), the Defendants' Reply (ECF No. 42-1), the Defendants' Notice of Supplemental Authority (ECF No. 44-1), the Plaintiff's Response to the Notice of Supplemental Authority (ECF No. 46), and the relevant law. For the following reasons, the Court GRANTS the Motion.

### I. BACKGROUND

This case concerns a dispute between the State of Texas ("Texas") and various federal officials and entities, namely: Alejandro Mayorkas, in his official capacity as Secretary of Homeland Security; the United States Department of Homeland Security ("DHS"); Merrick Garland, in his official capacity as Attorney General of the United States; and the United States Department of Justice ("DOJ") (collectively, "the Defendants"). (FAC at 1.) Texas challenges a rule (the "Rule") that DHS and DOJ promulgated to address migrant crossings at the United States-Mexico border.[1]

The Rule presumes that migrants who traveled through a country other than their own before crossing the southwest border are ineligible for asylum. 88 Fed. Reg. 31,314, 31,321-22. It exempts from that presumption aliens who schedule appointments at a designated Port of Entry ("POE") using the CBP One mobile application ("CBP One app" or "app"). *Id.* at 31,322. Texas claims this exception grants immigration relief in violation of the Immigration and Nationality Act ("INA") to hundreds of thousands of migrants to whom DHS would otherwise deny entry into the United States. (*See generally* FAC.) Texas asks the Court to vacate the Rule's exception for CBP One app users, enjoin its enforcement, and declare the Defendants' acts unlawful. (*Id.* at 1-2.) The Court summarizes Texas's allegations below.

### A. Factual Background

#### a. Title 42 Order

The Centers for Disease Control and Prevention ("CDC") authorized the expulsion of noncitizens who lacked sufficient documents for entry into the United States under Title 42 ("Title 42 Order") during the COVID-19 pandemic. (FAC 3 at ¶ 9.) Expelled migrants could not assert asylum claims, and DHS did not place them in immigration proceedings under that order. (*Id.*) The Biden Administration announced that the Title 42 Order would expire on May 11, 2023. (*Id.* at ¶ 10.)

#### b. The CBP One App

United States Customs and Border Protection ("CBP") launched the CBP One app on October 28, 2020. (*Id.* 6 at ¶ 23.) Upon its release, the app offered functions such as providing Form I-94 information and allowing travelers to schedule inspection appointments for perishable cargo.[2] (*Id.* at ¶ 24.) CBP introduced new app features in January 2023 that allow noncitizens in central or northern Mexico to schedule an appointment to present themselves at a port of entry ("POE"). (*Id.* 6-7 at ¶¶ 25-26.) App users input their method of entry (land, air, or sea), name, physical location, photo, contact and family information, and preferred POE among eight POEs, five of which are in Texas: Brownsville, El Paso, Eagle Pass, Hidalgo, and Laredo.[3] (*Id.* 9 at ¶¶ 39-40, 44.) Migrants may seek asylum or other forms of protection from removal during their appointment but not through the app. (*Id.* 9-10 at ¶¶ 45-46.)

#### c. The Rule

*2 DHS and DOJ jointly issued a notice of proposed rulemaking on February 23, 2023 for a new regulation designed to encourage app use and streamline POE

processing in anticipation of a migrant surge after the Title 42 Order expired. (*Id.* 7 at ¶¶ 27-28); *see generally* 88 Fed. Reg. 11,704. The Defendants jointly issued the Rule, titled "Circumvention of Lawful Pathways," on May 16, 2023 after the notice-and-comment process concluded. (FAC 7 at ¶ 29); 88 Fed. Reg. 31,314. The Rule creates a presumption of asylum ineligibility for noncitizens who enter the United States from Mexico at the southwest land border or adjacent coastal borders, after traveling through a country other than their country of citizenship or nationality. (FAC 7-8 at ¶¶ 30-31.)

The Rule instructs asylum officers and immigration judges to apply the presumption during removal proceedings and credible fear screenings. *See* 88 Fed. Reg. 31,450. The presumption does not apply to unaccompanied children, *id.*, or noncitizens who: (1) "provided appropriate authorization to travel to the United States to seek parole, pursuant to a DHS-approved parole process;" (2) "[p]resented at a port of entry, pursuant to a pre-scheduled time and place;" (3) "presented at a port of entry without a pre-scheduled time and place" and "demonstrate[ ] by a preponderance of the evidence that it was not possible to access or use the DHS scheduling system" as a result of certain barriers; or (4) sought and was denied "asylum or other protection in a country through which" they traveled. *Id.* The Rule's presumption ostensibly raises the evidentiary burden that aliens must satisfy to gain asylum.[4] The INA requires asylum applicants to demonstrate refugee status, and the Rule presumes applicants are not refugees. *See, e.g.,* 🚩 8 U.S.C. § 1158(b)(1)(B)(i). Applicants may overcome that presumption by demonstrating "exceptionally compelling circumstances" such as medical emergencies and "extreme threat[s] to life and safety." *Id.* The Rule's exceptions waive this additional requirement. *Id.*

### d. Texas's Challenge to the Rule

Texas challenges the Rule's exception for migrants who schedule appointments using the CBP One app. (*See generally* FAC.) According to Texas, the "app has facilitated the largest expansion of migrant processing" at southwest-border POEs in history. (*Id.* 8 at ¶ 34 (quotation marks omitted).) The appointment exception purportedly encourages aliens to enter the United States without establishing that they meet an exception to removal or may lawfully remain in the country. (*Id.* 10 at ¶ 49.) Texas contends that the exception "confers a legal benefit" on otherwise-inadmissible app users, deeming them to have entered the United States legally. (*Id.* 10-11 at ¶ 51.) The Rule allegedly incents migrants who lack documents or meritorious asylum claims to enter the United States during an all-time-high inflow of such migrants. (*Id.* 14 at ¶ 47.) Texas claims it suffers significant costs from app-facilitated migration because five of the eight POEs are in Texas. (*Id.* 13 at ¶¶ 44-45.)

CBP has allegedly expanded the availability of CBP One app appointments over time. (*Id.* 11 at ¶ 56.) The Defendants made approximately 740 appointments available per day before the Title 42 Order expired. (*Id.* 11-12 at ¶ 57.) Daily availability increased to 1,000 after its expiration, then climbed to 1,450 on June 30, 2023. (*Id.* 12 at ¶ 57 & n.16.)

**\*3**  The Defendants allegedly parole nearly all migrants who use the CBP One app. (*Id.* at ¶ 58.) Between January 12, 2023 and September 30, 2023, migrants scheduled 278,431 CBP One app appointments and the Defendants issued "notices to appear" to and paroled 266,846 app users. (*Id.*) Texas alleges that the Defendants' "*en masse*" parole inflicts public-services costs on Texas. (*Id.* 13 at ¶ 45.)

Texas filed suit on May 23, 2023, seeking to enjoin the Rule's appointment exception. (ECF No. 1.) The Court granted the Defendants a time extension to file an answer (ECF No. 8), and the Defendants filed a Motion to dismiss the Complaint on August 30, 2023. (ECF No. 20.) The Court granted Texas an extension of time to respond to the Defendants' Motion to Dismiss the Complaint, and Texas requested leave to amend its Complaint on November 10, 2023. (ECF Nos. 22, 23.) The Court granted Texas's request and dismissed the Defendant's Motion to Dismiss the Complaint without prejudice. (ECF No. 29.)

Texas filed its FAC on February 5, 2024. The FAC asks the Court to vacate, declare unlawful, and enjoin implementation of the Rule's appointment exception. (FAC at 25.) Count I alleges that the exception exceeds statutory authority and violates 🚩 5 U.S.C. § 706(2)(A), (C). (*Id.* 16-19 at ¶¶ 54-72.) Count II alleges that the exception is arbitrary and capricious under 🚩 5 U.S.C. § 706(2)(A). (*Id.* 20-22 at ¶¶ 73-86.) Count III alleges that the app's scheduling function is *ultra vires* under common law and under 5 U.S.C. § 702. (*Id.* 22-24 at ¶¶ 87-103.)

The Defendants moved to dismiss the FAC on March 15, 2024. (ECF No. 34.) Texas filed a Response in Opposition on

May 10, 2024. (ECF No. 41.) The Defendants filed a Reply on May 30, 2024. (ECF No. 42-1.) The Defendants filed a Notice of Supplemental Authority on July 3, 2024. (ECF No. 44-1.) Texas filed a Response to the Notice of Supplemental Authority on July 15, 2024. (ECF No. 46.) The Motion to Dismiss (ECF No. 34) is now ripe for decision.

## II. ANALYSIS

**A. Statutory Background**

"Any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival...)... may apply for **asylum**...." 8 U.S.C. § 1158(a)(1). Aliens whom the DHS Secretary or the Attorney General determines are "refugees" qualify for **asylum**. [5] *Id.* § 1158(b)(1)(A). **Asylum** applicants bear the burden of proof to show refugee status. *Id.* § 1158(b)(1)(B)(i). The Attorney General may promulgate regulations that "establish additional limitations and conditions, consistent with this section, under which an alien shall be ineligible for **asylum**." *Id.* § 1158(b)(2)(C). [6]

*4 The DOJ generally must detain applicants until their **asylum** proceedings conclude. *Id.* § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution."). However, the Attorney General "in his discretion" may "parole [an alien] into the United States ...." *See id.* § 1182(d)(5)(A). This discretion "is not unbounded." *Biden v. Texas*, 597 U.S. 785, 806 (2022). The DOJ may parole **asylum** applicants "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *Id.* § 1182(d)(5)(A). Congress added this language to address "concern that parole under § 1182(d)(5)(A) was being used by the executive to circumvent congressionally established immigration policy." *Cruz-Miguel v. Holder*, 650 F.3d 189, 199 n.15 (2d Cir. 2011) (discussing 1996 amendment to INA's parole provision). At least one court in this circuit has rejected grants of parole "on a categorical basis by a broad, programmatic decision." *Texas v. Biden*, 646 F. Supp. 3d 753, 774 (N.D. Tex. 2022), *appeal dismissed*, No. 23-10143, 2023 WL 5198783 (5th Cir. May 25, 2023).

**B. Dismissal Under Rule 12(b)(1) – Subject Matter Jurisdiction**

The Defendants' Motion to Dismiss proceeds under Rules 12(b)(1) and 12(b)(6). (ECF No. 34.) "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The Court therefore first addresses the Defendants' Rule 12(b)(1) arguments.

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quotation marks and citation omitted). The plaintiff must prove jurisdiction. *Id.* Courts assessing subject matter jurisdiction under Rule 12(b)(1) may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

The power of the federal judiciary extends only to "Cases" and "Controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016); U.S. Const. art. III, § 2. "One element of the case-or-controversy requirement is that [a plaintiff], based on [its] complaint, must establish that [it has] **standing** to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). A plaintiff need only "allege facts that give rise to a plausible claim of ... **standing**" at the motion-to-dismiss stage. *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' " *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

A plaintiff "does not have **standing** to challenge a government regulation simply because [it] believes that the government is acting illegally." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church*

*& State, Inc.*, 454 U.S. 464, 473 (1982)). It may not sue based only on an "asserted right to have the Government act in accordance with law." *Id.* (quotation omitted). There is no general "overs[ight of] the conduct of the National Government by means of lawsuits in federal courts." *Id. at* 396 (quotation omitted) (citing *United States v. Texas (Enforcement Priorities)*, 599 U.S. 670, 685 (2023)).

**\*5** The "irreducible constitutional minimum of **standing** contains three elements." *Lujan*, 504 U.S. at 560. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. The plaintiff bears the burden to show **standing**. *Id.* "[P]laintiffs must demonstrate **standing** for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

The first prong of the **standing** inquiry is injury. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). Particularity requires that the plaintiff be affected in a "personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). A plaintiff who seeks to ensure that a defendant complies with the law does not have "grounds for Article III **standing**" absent some "physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in American Courts." *TransUnion*, 594 U.S. at 427-28.

The FAC alleges cognizable injuries in the form of healthcare, education, and law enforcement expenditures.[7] Generally, a "pocketbook injury" is "a prototypical form of injury in fact." *Collins v. Yellen*, 594 U.S. 220, 243 (2021). "For **standing** purposes, a loss of even a small amount of money is ordinarily an 'injury.' " *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 465 (2017) (citation omitted). Texas cites another district court's factual findings to support its claim that it has **standing** to challenge federal programs that allegedly cause Texas to "incur[ ] costs from increased illegal immigration into the State in ... health care, education, and law enforcement."

*Texas v. Garland*, No. 5:23-CV-034-H, 2024 WL 967838, at \*11 (N.D. Tex. Feb. 27, 2024).[8]

Texas first alleges healthcare costs. (FAC 15 at ¶¶ 50-54; *see also* ECF No. 39 at 4-5.) The Northern District of Texas found that Texas spends millions to provide Emergency Medicaid coverage and Texas Children's Health Insurance Program Perinatal Coverage to migrants and their children. *Garland*, 2024 WL 967838, at \* 11. Federal law requires States to provide Medicare and Medicaid emergency services without regard to a recipient's immigration status. *See* 42 U.S.C. § 1395dd; 42 C.F.R. § 440.255. Texas bears part of the cost of those services when qualifying migrants obtain covered healthcare services in Texas. *Garland*, 2024 WL 967838, at \*11 (citing 8 U.S.C. § 1611(b)(1)(A)).

**\*6** Texas also alleges education costs. (FAC 14 at 47; *see also* ECF No. 39 at 5.) It claims it spends millions per year to educate migrants and their children. (ECF No. 39 at 5.) The Northern District of Texas found that "the average funding entitlement from state and local sources for fiscal year 2023 will be $9,564 per student in attendance for an entire school year," and "[t]o provide additional bilingual education, which Texas does for most alien children, Texas must spend $11,781 to educate each student." *Garland*, 2024 WL 967838, at \*11 (quotations omitted). Texas cannot avoid these costs because "consistent with the Equal Protection Clause of the Fourteenth Amendment, Texas may [not] deny to undocumented school-age children the free public education that it provides to children who are citizens of the United States or legally admitted aliens." *Plyler v. Doe*, 457 U.S. 202, 205 (1982).

Texas last alleges law enforcement costs. (FAC 13 at ¶ 45; *see also* ECF No. 39 at 5.) The Northern District of Texas found that the Texas Department of Criminal Justice ("TDCJ") spends a daily amount of $77.49 systemwide for an individual inmate. *Garland*, 2024 WL 967838, at \*11. The TDCJ incarcerated 6,914 undocumented aliens for violations of state or local law for a total of 2,019,635 days in fiscal year 2022 and spent $156,501,516. *Id.* Texas spent approximately $4.69 per day for those released on parole or mandatory supervision. *Id.* "[R]eimbursement of these costs from the federal government is minimal." *Id.* For fiscal year 2021, TDCJ spent $153,786,422 on such incarceration costs but received only $14,883,040 in federal reimbursement. *Id.* " '[T]o the extent the number of aliens in TDCJ custody

increases, TDCJ's unreimbursed expenses will increase as well.' " *Id.* (citation omitted).

The Fifth Circuit has found that "financial harms are readily cognizable and well-established" when a State claims they arise from an unlawful federal program. *See Gen. Land Off. v. Biden*, 71 F.4th 264, 272 (5th Cir. 2023); *see also, e.g., Texas v. Biden (MPP I)*, 10 F.4th 538, 547-48 (5th Cir. 2021); *Texas v. Biden (MPP II)*, 20 F.4th 928, 969-72 (5th Cir. 2021), *as revised* (Dec. 21, 2021), *rev'd and remanded*, 597 U.S. 785 (2022); *Texas v. United States (DACA)*, 50 F.4th 498, 517-19 (5th Cir. 2022). However, the Supreme Court has more recently narrowed plaintiffs' **standing** to challenge federal programs based on indirect, downstream monetary costs such as those Texas claims here. *See, e.g., Enforcement **Priorities***, 599 U.S. 670; [9] *All. for Hippocratic Med.*, 602 U.S. 367.

Texas and Louisiana alleged in *Enforcement **Priorities*** that an Executive policy concerning the arrest and removal of noncitizens inflicted higher social-service and law-enforcement costs on States because the federal government failed to arrest more noncitizens under that policy. 599 U.S. at 674. The Supreme Court held that States have no cognizable injury arising from Executive Branch guidelines concerning the exercise of Article II foreign-policy and "[law-]enforcement discretion over arrests and prosecutions" for immigration law violations. *Id.* at 679. "[F]or **standing** purposes, the absence of coercive power over the plaintiff makes a difference: When 'a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed' to establish **standing**.' " *Id.* at 678 (quoting *Lujan*, 504 U.S. at 561-62). "A 'telling indication of the severe constitutional problem' with the States' assertion of **standing** to bring th[at] lawsuit '[wa]s the lack of historical precedent' supporting it." *Id.* at 677 (quoting *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 505 (2010) and *Raines v. Byrd*, 521 U.S. 811, 826 (1997)). The Supreme Court anticipated that "green-light[ing]" such a suit would precipitate challenges to "alleged Executive Branch under-enforcement of any similarly worded laws—whether they be drug laws, gun laws, obstruction of justice laws, or the

like." *Id.* at 681. The Court "declin[ed] to start the Federal Judiciary down that uncharted path." *Id.*

**\*7** These principles apply here. The Rule and its appointment exception do not involve the exercise of coercive power over Texas. *See Enforcement **Priorities***, 599 U.S. at 678-81. The Rule implicates foreign-policy and law-enforcement discretion that Article II entrusts to the Executive Branch. *See id.* Texas "ha[s] not cited any precedent, history, or tradition of courts ordering the Executive Branch to change its" **asylum** policies so that the Executive Branch denies **asylum** or parole to more migrants. *Id.* at 677. While *Enforcement **Priorities*** noted that detention policies "arguably might" yield a different **standing** calculus, this case does not concern "the continued detention of noncitizens who have already been arrested" because the Defendants parole the migrants at issue without first arresting them. [10] *Id.* at 683. [11] The FAC therefore fails to allege judicially cognizable harm.

Texas lacks Article III **standing** for want of cognizable harm. The Court thus need not address the traceability or redressability prongs of Article III **standing** analysis. Accordingly, the Court also lacks subject matter jurisdiction to reach the Defendants' Rule 12(b)(6) arguments. The Court therefore must dismiss the FAC without prejudice. [12]

### III. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss (ECF No. 34) is **GRANTED.** The Amended Complaint is **DISMISSED WITHOUT PREJUDICE.** Texas shall have thirty (30) days from the date of this Memorandum Opinion and Order to amend its pleading to allege facts sufficient to establish Article III **standing**.

IT IS SO ORDERED.

SIGNED and ENTERED on this 5th day of August 2024.

**All Citations**

--- F.Supp.3d ----, 2024 WL 3679380

**Footnotes**

1    The United States District Court for the Northern District of California vacated the Rule in July 2023. *E. Bay Sanctuary Covenant v. Biden*, 683 F. Supp. 3d 1025, 1030, 1054 (N.D. Cal. 2023). However, the United States Court of Appeals for the Ninth Circuit stayed the district court's order pending appeal and held the appeal in abeyance. *E. Bay Sanctuary Covenant*, No. 23-16032, 2023 WL 11662094 (9th Cir. Aug. 3, 2023); *E. Bay Sanctuary Covenant v. Biden*, 93 F.4th 1130 (9th Cir. 2024) (mem.). The Rule thus remains in effect.

2    Form 1-94 records an admitted alien's arrival and departure ("admit until") dates. *See Form I-94, Arrival/Departure Record, Information for Completing USCIS Forms*, U.S. CITIZENSHIP & IMMIGR. SERVS., https://www.uscis.gov/forms/all-forms/form-i-94-amvaldeparture-record-information-for-comp]eting-uscis-forms (last visited July 23, 2024); *see generally Official Site for Travelers Visiting the United States*, U.S. CUSTOMS & BORDER PROT., https://i94.cbp.dhs.gov/I94/ (last visited July 23, 2024).

3    Users must be physically located in northern or central Mexico to request an appointment. (FAC 9 at ¶ 43.)

4    The Northern District of California found that the Rule's presumption of ineligibility makes it harder for aliens to gain asylum. *E. Bay Sanctuary Covenant*, 683 F. Supp. 3d at 1041 ("[t]he Rule effectively conditions asylum eligibility on whether a noncitizen qualifies for any of three exceptions").

5    Generally, the term "refugee" under the INA refers to migrants who cannot return to their home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Asylum applicants must establish that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." *Id.* § 1158(b)(1)(B)(i).

6    Because the Court lacks jurisdiction to address the Rule 12(b)(6) arguments, the Court does not reach whether the Rule was properly promulgated or whether the Defendants' parole decisions violate the INA's requirements. Moreover, the Court is aware of an internal DHS report indicating that the program on which the Rule was based was rife with fraud. *See, e.g.*, Camilo Montoya-Galvez, *U.S. Pauses Migrant Sponsorship Program Due to Fraud Concerns*, CBSNEWS.COM (Aug. 2, 2024), https://www.cbsnews.com/news/us-migrant-sponsorship-program-paused-cuba-haiti-nicaragua-venezuela/; Adam Shaw, *Biden Admin Freezes Controversial Migrant Flight Program after Fraud Revelations*, FOXNEWS.COM (Aug. 2, 2024), https://www.foxnews.com/politics/biden-admin-freezes-controversial-migrant-flight-program-after-fraud-revelations. No party has provided a copy of this report to the Court. Regardless, the report does not affect the Court's standing analysis.

7    The Court declines to address allegations of harm abandoned in Texas's Response to the Motion to Dismiss. (*Compare* FAC 13-14 at fl 45-49, *with* ECF No. 39 at 3-6); *see McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023) ("a party abandons a claim by failing to defend it in response to motions to dismiss") (collecting cases), *cert. denied*, 144 S. Ct. 348 (2023) (mem.), *reh'g denied*, 144 S. Ct. 629 (2024) (mem.). The Court has considered these alleged injuries, including costs derived from driver's license subsidies, depression of citizens' wages, and harms to Texas's sovereignty, and finds they do not support Article III standing.

8    Texas alleges general healthcare, education, and law enforcement costs. (*See* FAC; ECF No. 39 at 13-16.) Texas provides the specific amounts listed below in its Response to the Defendants' Motion to Dismiss (ECF No. 41) and cites *Garland*, 2024 WL 967838, for each figure.

9     "[F]ederal policies frequently generate indirect effects on state revenues or state spending. And when a State asserts, for example, that a federal law has produced only those kinds of indirect effects, the State's claim for **standing** can become more attenuated." *Id.* at 680 n.3. (citing *Massachusetts v. Laird*, 400 U.S. 886 (1970), and *Florida v. Mellon*, 273 U.S. 12, 16-18 (1927)).

10     Texas has not alleged that the Defendants arrest app users before paroling them.

11     The court in *Garland* neither cited nor engaged with the reasoning of *Enforcement* **Priorities** in finding that Texas's indirect costs passed constitutional muster. *See* 2024 WL 967838, at *21-22 (applying pre-*Enforcement* **Priorities** Fifth Circuit precedents). However, at least one district court has found that *Enforcement* **Priorities** does not bar Article III **standing** based on the kinds of injuries Texas alleges based on that decision's potential "continued detention" exception. *See Florida v. United States*, No. 3:21-CV-1066-TKW-ZCB, 2024 WL 677713, at *2 (N.D. Fla. Feb. 20, 2024) (discussing *Enforcement* **Priorities**, 599 U.S. at 683 (quoting *Biden*, 597 U.S. 785, which left unanswered "whether the detention requirement in [8 U.S.C. §] 1225(b)(2)(A) is subject to principles of law enforcement discretion, as the Government argues, or whether the Government's current practices simply violate that provision.")). The *Florida* court reaffirmed its pre-*Enforcement* **Priorities** finding that additional public-education costs allegedly derived from immigration parole policies constitute cognizable injuries. 2024 WL 677713, at *2. Notably, that decision concerned a direct challenge to parole polices. *Id.* Here, Texas challenges an **asylum** policy with potential consequences for **asylum** and parole determinations. *Enforcement* **Priorities** contemplates no similar exception for **asylum** policies.

12     "When a district court dismisses a case for lack of subject matter jurisdiction, the proper course is to dismiss the case without prejudice." *See Fort Bend Cnty. v. U.S. Army Corps of Eng'rs*, 59 F.4th 180, 191 n.4 (5th Cir. 2023), *Ramming*, 281 F.3d at 161. "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Ramming*, 281 F.3d at 161.

**End of Document**     © 2024 Thomson Reuters. No claim to original U.S. Government Works.