IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| STATE OF INDIANA, STATE OF NORTH DAKOTA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ALEJANDRO MAYORKAS, in his official capacity as Secretary of Homeland Security, *et al.*, <br><br> Defendants. | Civil Action No.1:23-cv-00106-DMT-CRH |

**PLAINTIFFS' SUPPLEMENTAL BRIEF**

The Court requested the parties provide supplemental briefing on two issues related to the Defendants' motion to dismiss. *See* Dkt. No. 83. First, the Court requested information from the Plaintiff States regarding the financial impact on the states since the implementation of the Circumvention of Lawful Pathways Rule ("Rule"). Second, the Court asked the parties to address the appropriate timeframe for the Court's review of border crossing and asylum numbers – at the time of the Complaint's filing or today.

**I.     Plaintiff States established standing at the time the complaint was filed.**

In response to the Court's request for supplemental briefing, Plaintiff States submit that the facts supporting injury should be reviewed as of the time of the filing the Complaint, especially at the motion to dismiss stage of the case. Plaintiff States further submit that they have provided sufficient evidence of the imminent and foreseeable financial impacts that existed at the time of the Complaint.

1

**A. Standing should be determined based on facts when the Complaint was filed.**

To establish Article III standing, the States must show they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

"The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n. 4 (1992) (emphasis in original; citation omitted). *See also, e.g., McNaught v. Nolen*, 76 F.4th 764, 769 (8th Cir. 2023) ("[S]tanding is assessed 'at the time the action commences.'") (citation omitted). "While the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed*." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (citations omitted) (emphasis added).

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (citation omitted). At the time of the complaint, future injuries "may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 537 U.S. 149, 158 (2014) (internal quotation marks omitted).

Moreover, "[a]s to the issue of the State's standing, it is well-established that 'States are not normal litigants for the purposes of invoking federal jurisdiction' and are owed 'special solicitude.'" *West Virginia, et. al. v. EPA*, 669 F.Supp.3d 781, 797 (D.N.D. 2023) (quoting *Massachusetts v. EPA*, 549 U.S. 497, 518-20 (2007) (explaining States are entitled to special solicitude for invoking federal court jurisdiction because some of their "sovereign prerogatives are now lodged in the Federal Government")). Other cases addressing immigration-related challenges

2

have applied the special solicitude framework when States challenge the Federal Government's refusal to faithfully apply immigration law. *See, e.g., Florida v. United States*, 660 F.Supp.3d 1239, 1265 (N.D. Fla. 2023) ("If special solicitude is to have any meaning, it must apply in the immigration context."); *Texas v. United States*, 50 F.4th 498, 516 (5th Cir. 2022) (DACA) (determining states have quasi-sovereign interest in immigration policy); *Texas v. United States*, 809 F.3d 134, 152 (5th Cir. 2015) (DAPA) (finding state plaintiffs were "challeng[ing] DHS's decision to act, rather than its decision to remain inactive, a procedural right similar to" that which was recognized in *Massachusetts*.).

### B. Plaintiff States have provided sufficient evidence to prove standing.

Plaintiff States provided sufficient allegations in their Complaint to show a "requisite stake in the outcome" sufficient to confer standing. *Davis*, 554 U.S. at 734. As alleged in the Complaint, states bear the costs of providing education to any children in their state regardless of their immigration status. *Plyler v. Doe*, 457 U.S. 202 (1982). States also bear the costs of providing emergency healthcare and many other public services to illegal immigrants within their borders. *See* Complaint, ¶¶ 106-108, 115-118. It was foreseeable at the time the Complaint was filed that the implementation of the Rule would predictably cause Plaintiff States to incur increased costs, and events since then have only borne that out.

In May 2023, prior to the Plaintiff States filing their complaint, there were 206,690 encounters at the Southern Border. *See* FY Southwest Land Border Encounters by Month, https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters, last visited October 17, 2024. Between May 31, 2023, when the complaint was filed and August 31, 2024 (last publicly available data), there were a total of 3,863,993 encounters. *Id*. While the data is not broken down as to whether the individuals were released in accordance with the Rule or its exceptions, the sheer

number of encounters make it foreseeable that at least one illegal alien granted release into this country under the Rule's unlawful exceptions resides in one of the Plaintiff States.

The Supreme Court has held that standing exists when it's based on "predictable" actions of third parties. *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019) ("we are satisfied that, in these circumstances, respondents have met their burden of showing that third parties will likely react in predictable ways to the citizenship question, even if they do so unlawfully and despite the requirement that the Government keep individual answers confidential."). The actions of the third-party aliens are far more predictable in the instant case than they were in *Department of Commerce v. New York*, as the foreseeable outcome of riddling the Rule with extremely broad and unlawful exceptions was, and remains, an incentive for further migrants to make unlawful crossings and specious asylum claims.

Indiana, for example, provided tuition support of approximately $7,500 per student to school corporations in fiscal year 2023. *See* Indiana Code §§ 20-43-6-3 (formula for basic tuition support), 20-43-3-8 (school corporation's foundation amount), H.E.A. 1001 (2023) (budget bill appropriating $8,840,000,000.00 for fiscal year 2023-2024 for tuition support). One student that is paroled through the Rule's exception would add an additional $7,500 in tuition support and does not account for any other financial benefits Indiana may provide, such as English Language Learner services. *See* Complaint, ¶ 62. Similarly, North Dakota's average cost per student for the 2022-2023 school year—the cost that will be incurred for every school-aged minor unlawfully released into the State under the Rule—was $14,345.87. *See* School Finance Facts, https://www.nd.gov/dpi/sites/www/files/documents/SFO/2024FinFacts.pdf. The imposition of such costs are imminent, foreseeable injuries based on the number of crossings at the Southern

4

Border, which remain at elevated levels as a predictable consequence of the Rule's unlawful exceptions.

As a district court in Florida found after trial: "Florida and other states are [] impacted by the border crisis because arriving aliens are being released at the border into the interior of the country in historic numbers." *Florida v. United States*, 660 F.Supp.3d 1239, 1261 (N.D. Fl. 2023). And the same evidence showing costs related to public assistance, emergency healthcare, unemployment benefits, public education expenses, and costs of incarcerating aliens who commit crimes sufficient to establish standing are also being experienced as financial harms to all Plaintiff States from the Rule's exceptions. That evidence also supports Plaintiff States' assertion that their injury is imminent and foreseeable (and was at the time of the Complaint as well).

In short, the evidence presented by Plaintiff States showing the large number of aliens crossing the border, the "predictable" effect that the Rule's exceptions will have in incentivizing further and continued illegal immigration, and the foreseeable expenses that will be incurred by Plaintiff States in response to that increased and continued illegal immigration are sufficient to show standing at this stage of the case.

### C. Defendants possess data that is needed to respond to the Court's specific request for immigration-related information since the Rule's inception.

Upon information and belief, additional evidence of the harm being inflicted upon Plaintiff States, attributable to the Rule's unlawful exceptions incentivizing illegal immigration is, or should be, in the possession of the Federal Government Defendants. That data includes the numbers and demographics of the illegal aliens who have crossed the border since the Rule's promulgation and received the benefit of the Rule's exceptions. To the Plaintiff States' knowledge, the Federal Government has not released that data.

As such, if the Court believes additional data regarding the impact of the Rule and its exceptions is warranted or required to assess Plaintiff States' standing to challenge the Rule and its unlawful exceptions, Plaintiff States respectfully submit that the Court should order jurisdictional discovery to permit the Plaintiff States the opportunity to obtain such information from the Defendants. Discovery regarding jurisdiction is "warranted if the facts necessary to resolve the jurisdictional inquiry are either unknown or can be genuinely disputed." *Viasystems, Inc. v. EMB-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011); *see also, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues.") (citation omitted); Order for Supplemental Information, *State of Kansas, et al. v. United States of America, et al.*, Case No. 1:34-cv-00150, Dkt. No. 87 (D.N.D. Oct. 15, 2024) (ordering the federal government to identify the DACA recipients in North Dakota for the purpose of enabling North Dakota to quantify the costs being imposed upon the State by the federal government's DACA program).

**II.     The border crossing numbers at the time of filing the complaint are relevant to Article III standing.**

As discussed above, the relevant inquiry for Article III standing relates to the facts as they existed at the time of filing the complaint. Therefore, the Court should consider the state of the border and the border crossing numbers at the time Plaintiff States filed their complaint for assessing whether, at that time, injury to Plaintiff States was predictable and foreseeable as a result of the Rule and its exceptions. And as asserted in Plaintiffs' complaint, the harm to Plaintiff States was foreseeable at that time.

More recent border crossing numbers, however, further solidify the conclusion that Plaintiff States are suffering injury from the Rule's unlawful exceptions, as the continuous stream

of illegal aliens crossing the border creates an imminent, foreseeable injury to the states. Whether reviewing the numbers when the Plaintiffs filed their complaint (206,690 crossings in May 2023, and 1,438,246 in the seven months preceding May 2023) or the most recent eight months of data (1,247,948 crossings between January and August 2024), the numbers support the inference that illegal aliens are arriving in each of the Plaintiff States at a dramatic scale, that such migration is being predictably incentivized, at least in part, by the Rule's expansive and unlawful exceptions, and that those illegal aliens arriving in Plaintiff States are foreseeably receiving public services at a cost to Plaintiff States and their taxpayers. *See* FY Southwest Land Border Encounters by Month, https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters, last visited October 17, 2024.

In short, while the state of affairs and foreseeable injury at the time of the Complaint's filing is the appropriate vantage point from which to assess Plaintiff States' standing, more recent data has not done anything to detract from the injuries that were readily foreseeable at that time.

Date: October 17, 2024

Respectfully Submitted,

| */s/ Philip Axt*<br>DREW H. WRIGLEY<br>Attorney General<br>PHILIP AXT (ND Bar No. 09585)<br>Solicitor General<br>North Dakota Attorney General's Office<br>600 E Boulevard Avenue, Dept. 125<br>Bismarck, ND 58505<br>(701) 328-2210<br>pjaxt@nd.gov<br>*Counsel for State of North Dakota* | */s/ Betsy M. DeNardi*<br>Betsy M. DeNardi, 23856-71<br>Special Counsel of Complex Litigation<br>Office Of the Indiana Attorney General<br>I.G.C.S, 5th Floor<br>302 West Washington Street<br>Indianapolis, IN 46204-2770<br>(317) 232-6231<br>Betsy.DeNardi@atg.in.gov<br>*Counsel for the State of Indiana* |
|---|---|
| *s/Christopher A. Robison*<br>Treg Taylor<br>Attorney General of Alaska | *s/ Dylan L. Jacobs*<br>Tim Griffin<br>Arkansas Attorney General |

| | |
|---|---|
| Cori M. Mills<br>Deputy Attorney General of Alaska<br>Christopher A. Robison<br>Alaska Bar No. 2111126<br>Texas Bar No. 24035720<br>Assistant Attorney General<br>Alaska Department of Law<br>1031 W. 4th Avenue, Suite 200<br>Anchorage, Alaska 99501-1994<br>chris.robison@alaska.gov<br>*Counsel for the State of Alaska* | Nicholas J. Bronni<br>Solicitor General<br>Dylan L. Jacobs<br>Deputy Solicitor General<br>Office Of the Arkansas Attorney General<br>323 Center St., Suite 200<br>Little Rock, AR 72201<br>(501) 682-6302<br>Nicholas.Bronni@Arkansasag.Gov<br>*Counsel for the State of Arkansas* |
| *s/ Natalie Christmas*<br>Natalie Christmas<br>Counselor to the Attorney General<br>Ashley Moody<br>Attorney General<br>Office of the Attorney General<br>The Capitol, PL-01<br>Tallahassee, Florida 32399<br>(850) 414-3300<br>(850) 410-2672 (fax)<br>Natalie.Christmas@myfloridalegal.com<br>*Counsel for the State of Florida* | *s/Alan Hurst*<br>Raúl R. Labrador<br>Idaho Attorney General<br>Alan Hurst<br>Solicitor General<br>Idaho Attorney General's Office<br>Statehouse, Room 210<br>Boise, ID 83720<br>(208) 334-2400<br>Alan.Hurst@ag.idaho.gov<br>*Counsel for the State of Idaho* |
| /s/ Eric H. Wessan<br>BRENNA BIRD<br>Attorney General of Iowa<br>Eric H. Wessan<br>Solicitor General<br>1305 E. Walnut Street<br>Des Moines, Iowa 50319<br>(515) 823-9117<br>(515) 281-4209 (fax)<br>eric.wessan@ag.iowa.gov<br>*Counsel for State of Iowa* | *s/Zachary M. Zimmerer*<br>RUSSELL COLEMAN<br>Attorney General of Kentucky<br>ZACHARY M. ZIMMERER<br>Assistant Attorney General<br>Kentucky Office of the Attorney General<br>700 Capital Avenue, Suite 118<br>Frankfort, Kentucky<br>Tel: (502) 696-5617<br>*Counsel for the Commonwealth of Kentucky* |
| Attorney General of Mississippi<br><br>*/s/ Justin L. Matheny*<br>Justin L. Matheny (MS Bar No. 100754)<br>  Deputy Solicitor General<br>Mississippi Attorney General's Office<br>P.O. Box 220<br>Jackson, MS 39205-0220 | *s/Joshua Divine*<br>Andrew Bailey<br>Missouri Attorney General<br>Joshua M. Divine<br>Solicitor General<br>Maria A. Lanahan<br>Deputy Solicitor General<br>Post Office Box 889 |

| | |
|---|---|
| Telephone: (601) 359-3680<br>Fax: (601) 359-2003<br>justin.matheny@ago.ms.gov<br>*Counsel for State of Mississippi* | Jefferson City, Missouri 65101<br>(573) 751-8870<br>Josh.Divine@ago.mo.gov<br>Maria.Lanahan@ago.mo.gov<br>*Counsel for the State of Missouri* |
| */s/ Christian B. Corrigan*<br>Austin Knudsen<br>Attorney General<br>Christian B. Corrigan<br>Solicitor General<br>Montana Department of Justice<br>P.O. Box 201401<br>Helena, MT 59620-1401<br>Phone: (406) 444-2026<br>christian.corrigan@mt.gov<br>*Counsel for the State of Montana* | *s/ Brandon F. Chase*<br>John M. Formella<br>Attorney General<br>Brandon F. Chase, NH Bar No. 270844<br>Assistant Attorney General<br>New Hampshire Department of Justice<br>33 Capitol Street<br>Concord, NH  03301<br>(603) 271-3650<br>brandon.f.chase@doj.nh.gov<br>*Counsel for the State of New Hampshire* |
| */s/ Garry M. Gaskins, II*<br>GENTNER F. DRUMMOND<br>Attorney General<br>GARRY M. GASKINS, II<br>Solicitor General<br>ZACH WEST<br>Director of Special Litigation<br>AUDREY A. WEAVER<br>Assistant Solicitor General<br>Oklahoma Attorney General's Office<br>State of Oklahoma<br>313 N.E. 21st Street<br>Oklahoma City, OK 73105<br>*Counsel for the State of Oklahoma* | */s Joseph D. Spate*<br>ALAN WILSON<br>    South Carolina Attorney General<br>ROBERT D. COOK<br>    Solicitor General<br>J. EMORY SMITH, JR.<br>    Deputy Solicitor General<br>THOMAS T. HYDRICK<br>    Assistant Deputy Solicitor General<br>JOSEPH D. SPATE<br>    Assistant Deputy Solicitor General<br>Post Office Box 11549<br>Columbia, SC 29211<br>(803) 734-3371<br>josephspate@scag.gov<br>*Counsel for the State of South Carolina* |
| */s/Whitney Hermandorfer*<br>Jonathan Skrmetti<br>Tennessee Attorney General<br>and Reporter<br>Whitney Hermandorfer<br>Director of Strategic Litigation Unit and<br>Assistant Solicitor General<br>Office of the Tennessee Attorney General | *s/Lance Sorenson*<br>Sean D. Reyes<br>Attorney General of Utah<br>Assistant Solicitor General<br>Office of the Attorney General<br>Utah State Capitol Complex<br>350 North State Street Suite 230<br>Salt Lake City, UT 84114-2320<br>(385) 441-4218 |

| | |
|---|---|
| P.O. Box 20207<br>Nashville, Tennessee 37202<br>(615) 253-5642<br>whitney.hermandorfer@ag.tn.gov<br>*Counsel for the State of Tennessee* | lancesorenson@agutah.gov<br>*Counsel for the State of Utah* |
| *s/ Kevin M. Gallagher*<br>Jason S. Miyares<br>Attorney General<br>Kevin M. Gallagher<br>Principal Deputy Solicitor General<br>Virginia Attorney General's Office<br>202 North 9th Street<br>Richmond, VA 23219<br>(804) 786-2071<br>kgallagher@oag.state.va.us<br>*Counsel for Commonwealth of Virginia* | *s/Ryan Schelhaas*<br>Bridget Hill<br>Wyoming Attorney General<br>Ryan Schelhaas<br>Chief Deputy Attorney General<br>109 State Capitol<br>Cheyenne, WY 82002<br>(307) 777-5786<br>ryan.schelhaas@wyo.gov<br>*Counsel for the State of Wyoming* |